IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON

JOHN D. SWIMM,

       Plaintiff,

v.                               CASE NO. 3:09-cv-00811

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B)

Plaintiff, John D. Swimm (hereinafter referred to as "Claimant"), filed an application for SSI on June 24, 2004, alleging disability as of October 1, 1999[1], due to back, neck and stomach problems.  (Tr. at 16, 96.)  The claim was denied initially

---

[1]  Claimant filed a previous application for SSI and disability insurance benefits ("DIB") on August 15, 2002.  That application was denied by final decision on March 23, 2004.  Claimant appealed to the Appeals Council and to the United States District Court, but his appeals were denied.  (Tr. at 16.)

and upon reconsideration.  (Tr. at 68-70, 72-76.)  On September 23, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 52.)  A hearing was held on November 17, 2006, before the Honorable James S. Quinlivan.  (Tr. at 289-300.) The ALJ conducted a supplemental hearing on July 20, 2007.  (Tr. at 301-17.)  By decision dated July 31, 2007, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 16-23.)  On May 15, 2009, the Appeals Council considered additional evidence offered by the Claimant, but determined it did not provide a basis for changing the ALJ's decision.  (Tr. at 6-9.)  On July 15, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 416.920 (2007).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 416.920(a).  The first

inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of cervical and lumbar degenerative disc disease.  (Tr. at 18.)   At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 19.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 19.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 22.)   Nevertheless, the ALJ concluded that Claimant could perform jobs such as night guard/gate attendant, product hand packer, cashier, product assembler, produce inspector and surveillance monitor, which exist in significant numbers in the national economy.  (Tr. at 23.)  On this basis, benefits were denied.  (Tr. at 23.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less

> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-six years old at the time of the administrative hearing. (Tr. at 293.) Claimant attended school through the ninth grade. (Tr. at 293-94.) In the past, he worked as a lumber stacker and construction laborer. (Tr. at 295.)

The Medical Record

The court has reviewed all evidence of record and will summarize it briefly below.

Evidence before the ALJ

Claimant underwent back surgery in the past. (Tr. at 212, 243.)

In 2003, Claimant underwent a lumbar MRI, which showed degenerative changes and stenosis.  (Tr. at 181-82.)

Claimant reported to the emergency room on April 22, 2004, complaining of back and abdominal pain.  (Tr. at 158.)  An endoscopy on June 18, 2004, showed mild antral gastritis and a small hiatal hernia.  (Tr. at 161.)

On November 11, 2004, Jules Barefoot, M.D. examined Claimant. Claimant had been unemployed for more than ten years and complained that he had back, neck and stomach problems.  (Tr. at 163-64.)  Dr. Barefoot diagnosed degenerative disc disease of the cervical spine - status post cervical fusion and history of depression.  (Tr. at 165.)  Claimant had diminished range of motion in both his cervical spine and both shoulders.  (Tr. at 165.)  Claimant was able to sit, stand, and move about.  Claimant also was able to lift, carry and handle objects.  Claimant's gait was normal.  Claimant's ability to grossly manipulate objects was normal, as was his grip strength. (Tr. at 166.)

On December 9, 2004, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work, with an occasional ability to climb ramps/stairs, an inability to climb ladders, ropes and scaffolds and a need to avoid concentrated exposure to extreme cold and heat.  (Tr. at 169-76.)

On January 3, 2005, Panos Ignatiadis, M.D. examined Claimant.

He had not seen Claimant since 2003, and noted that Claimant had neck surgery "some time ago for which he has not improved."   (Tr. at 178.)   Claimant's MRI was "perfect.  His fusion at C/5-6 and C/6-7 is unequivocal."   (Tr. at 178, 179.)   Claimant had no neurological deficit.  Dr. Ignatiadis noted that Claimant was still on Lortab and that his use should be decreased and that Claimant should be referred to pain management.   (Tr. at 178.)   Dr. Ignatiadis explained that Claimant "has to take medication over the counter and he has to see pain management if his pain is not improved and that is that.  There is nothing else I can offer him at this [juncture]."   (Tr. at 178.)

The record includes treatment notes from University Physicians Internal Medicine dated January 13, 2003, through April 8, 2005. (Tr. at 183-210.)  Claimant was treated for chronic gastritis, back pain with chronic narcotic use, chronic nicotine use and contact dermatitis.  (Tr. at 184.)

On June 28, 2005, Tammy Corbett-Alderman, M.A. conducted a consultative mental examination at the request of the State disability determination service.  Ms. Corbett-Alderman made no diagnoses on Axis I or Axis II.  (Tr. at 215.)  She observed that Claimant did not report any symptoms consistent with diagnostic criteria for any mental disorder.  "He was considered to be an inadequate and unreliable informant.  It is suspected that he attempted to minimize his alcohol use."  (Tr. at 215.)  Claimant's

immediate memory, recent memory and concentration/attention and pace were all within normal limits.  (Tr. at 215.)  Remote memory and persistence were mildly deficient.  Social functioning was within normal limits.  (Tr. at 216.)

On July 14, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work with no other limitations. (Tr. at 217-24.)

On August 10, 2005, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant had no medically determinable mental impairment.  (Tr. at 225-38.)

On February 26, 2007, Mark V. Burns, M.D. examined Claimant at the request of the ALJ.  The neurological examination was normal. Claimant had no tenderness in the back.  Straight leg raising was 90 degrees in both the sitting and supine positions bilaterally. Claimant had no limitations in range of motion in the upper or lower extremities.  (Tr. at 244.)  Dr. Burns stated that

> [b]ased on the medical findings, it would appear that Mr. Swimm has the ability to perform activities involving sitting, standing, moving about, lifting, carrying and handling objects, hearing, seeing, speaking and traveling.  His physical examination was within normal limits.  His orthopedic examination was without limitation.

(Tr. at 245.)

Dr. Burns completed a Medical Assessment of Ability to do Work-Related Activities (Physical) and opined that Claimant could

perform medium work with limitations in repeated overhead reaching. (Tr. at 247-48.)

X-rays of Claimant's lumbar spine on May 10, 2007, showed mild degenerative disc and degenerative joint disease without fracture. (Tr. at 252.)

Evidence submitted to Appeals Council

Claimant submitted evidence to the Appeals Council dated May 10, 2007, from Glen P. Imlay, M.D.  Claimant presented with chronic neck and low back pain following surgery in 2003.  Claimant was taking Lortab, but had been out of it for six months.  The lumbar range of motion was limited because of pain.  Strength in the lower extremities was 5/5, reflexes were 2+ at the knees and ankles. Claimant had a negative Fabere's, and his sensation was intact. (Tr. at 256.)  Dr. Imlay planned to obtain Claimant's MRI and other records and ordered a drug screen and x-ray.  Dr. Imlay prescribed Ultram, Zanaflex and Lodine, but Claimant "was not interested in the medications and he left."   (Tr. at 257.)   Claimant's drug screen was negative.  (Tr. at 258.)

The evidence submitted to the Appeals Council included older evidence from Dr. Ignatiadis, some of which was already in the record.  On September 24, 2002, Dr. Ignatiadis noted MRI evidence of a disc herniation at C/5-6 anteriorly as well as at C/7 T/1. Dr. Ignatiadis recommended surgery.  (Tr. at 260.)  Claimant submitted cervical and lumbar MRIs dated August 8, 2002, and July

25, 2003 (tr. at 261-62); duplicate treatment notes from University Physicians Internal Medicine dated June 30, 2003, and November 11, 2003 (tr. at 265-66, 270); treatment notes from Dr. Ignatiadis dated May 23, 2003, July 7, 2003, July 18, 2003, and August 18, 2003, and the operative report and other evidence from Claimant's back surgery in 2003 (tr. at 267-69, 272-82).

Claimant submitted a Medical Source Statement of Ability to do Work-Related Activities (Mental) dated September 13, 2007, from D.H. Webb, III, M.D.  Dr. Webb rated Claimant's abilities as fair to poor in all areas and cited chronic neck, arm and back pain, loss of physical ability causing severe depression, anxiety and panic attacks.  (Tr. at 284-85.)

By letter dated February 29, 2008, Dr. Webb stated that Claimant had been a patient since July 11, 2007, and first presented to Dr. Webb with complaints of neck pain.  Claimant's diagnoses included mood disorder due to general medical condition, accompanied by severe bouts of major depression and panic attacks, rule out major depressive disorder, recurrent, severe without psychotic features and rule out adjustment disorder with mixed anxiety and depressed moods on Axis I.  An Axis II diagnosis was deferred.  Dr. Webb rated Claimant's GAF at 45/50.  (Tr. at 287.) Dr. Webb stated that Claimant was seen monthly for psychotherapy sessions and medication management visits.  Dr. Webb noted that he had last seen Claimant on February 14, 2008.  (Tr. at 287.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in failing to explain whether Claimant had severe stomach impairments; (2) the Appeals Council erred in failing to consider the evidence submitted from Claimant's treating psychiatrist; and (3) the ALJ failed in his duty to develop the record, particularly because Claimant was <u>pro</u> <u>se</u> at the time.  (Pl.'s Br. at 9-14.)

The Commissioner argues that (1) Claimant refused to fully cooperate with the Social Security Administration during the processing of his SSI claim; (2) Claimant's statements were internally inconsistent and conflicted with the evidence of record; (3) the Appeals Council considered the post-decision evidence Claimant submitted and correctly determined that it did not provide a basis for changing the ALJ's decision; and (4) the ALJ properly advised Claimant of his right to representation and assisted him in developing the record.  (Def.'s Br. at 3-18.)

Claimant first complains that the ALJ erred in failing to address whether Claimant had a severe stomach impairment.  (Pl.'s Br. at 7.)  A severe impairment is one "which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c) (2007); <u>see also</u> 20 C.F.R. § 416.921(a) (2007); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-41 (1987) (recognizing change in severity standard).  "Basic work activities" refers to "the

abilities and aptitudes necessary to do most jobs." 20 C.F.R. §

416.921(b) (2007). Examples of basic work activities are:

> (1) Physical functions such as walking,
> standing, sitting, lifting, pushing, pulling,
> reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and
> speaking;
> (3) Understanding, carrying out, and
> remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to
> supervision, co-workers and usual work
> situations; and
> (6) Dealing with changes in a routine
> work setting.

Id.

The undersigned proposes that the presiding District Judge

find that although the ALJ did not state explicitly in his decision

that Claimant's stomach impairment was not severe, that finding can

be deduced from his statements in analyzing Claimant's severe

impairments at step two of the sequential analysis. In addition,

the ALJ stated as much at the second administrative hearing. The

undersigned further proposes that the presiding District Judge find

that substantial evidence supports the determination that Claimant

did not suffer severe stomach impairments.

At the administrative hearing, the ALJ stated in his

hypothetical question that Claimant "has stomach upset,

gastrointestinal distress, epigastric reflux disease, and maybe a

past history ... of an ulcer, but that's all considered non-

severe." (Tr. at 310.) In the section of his decision analyzing

Claimant's impairments at step two of the sequential analysis, related to severity, the ALJ stated that Claimant "has had complaints of stomach problems.  However, testing showed a questionable small hiatal hernia with mild reflux (Exhibit B8F). He was diagnosed with antral gastritis secondary to H. Pylori infection in July 2004."  (Tr. at 19.)  The record simply does not indicate significant treatment for stomach problems, nor does Claimant indicate significant limitations in his various statements throughout the record.  (Tr. at 97, 103, 119, 308.)

Next, Claimant argues that the Appeals Council erred in "refusing to consider the evidence submitted from Claimant's treating psychiatrist which did contain a report of treatment that stated when treatment began, frequency of treatment, diagnosis and a d[e]scription of the Claimant's condition on the last date seen at that time."  (Pl.'s Br. at 9.)

In Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991), the Appeals Council incorporated into the administrative record a letter submitted with the request for review in which Wilkins' treating physician offered his opinion concerning the onset date of her depression.  The Wilkins court decided that it was required to consider the physician's letter in determining whether substantial evidence supported the ALJ's findings. Id.  The Fourth Circuit explained:

> "Reviewing courts are restricted to the administrative
> record in performing their limited function of

> determining whether the Secretary's decision is supported by substantial evidence." Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972); see 42 U.S.C.A. § 405(g). The Appeals Council specifically incorporated Dr. Liu's letter of June 16, 1988 into the administrative record. Thus, we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.

Id. Under Wilkins, the court must review the record as a whole, including the new evidence submitted to the Appeals Council, in order to determine whether the ALJ's decision is supported by substantial evidence.

The Appeals Council made the following statement in its Notice dated May 15, 2009:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.  The evidence at Exhibit AC-2 does not pertain to the period at issue.  Your representative also provided a medical source statement from Dr. Web (Exhibit AC-3).  However, Dr. Webb did not provide any treatment notes or medical findings to support his opinions. Consequently, the Council concluded that this information does not provide a basis for changing the [ALJ's] decision.

(Tr. at 6-7.)

The Appeals Council considered and incorporated the additional evidence offered by Claimant, and the undersigned proposes that the presiding District Judge find that the determination of the Appeals Council that the additional evidence did not provide a basis for changing the ALJ's decision is supported by substantial evidence. The undersigned further proposes that the presiding District Judge find that even considering the additional evidence offered by the

14

Claimant, the ALJ's decision is supported by substantial evidence.

As the Appeals Council indicated in its decision and as noted above, much of the evidence submitted by Claimant in Appeals Council Exhibit AC-2 (Tr. at 259-82) is dated in 2002 and 2003 and, therefore, predates the relevant time period at issue in the instant matter.  Some of the evidence also is duplicative of evidence already in the record.  The evidence dated in 2002 and 2003 submitted to the Appeals Council confirms that Claimant had surgery, a fact acknowledged by the ALJ.

The evidence submitted from Dr. Imlay (Appeals Council Exhibit AC-1) is dated May 10, 2007, before the ALJ's decision, but it diagnoses chronic low back pain and history of surgery for cervical injury in 2003.  In short, it adds nothing new to the evidence before the ALJ.

Finally, although the Notice does not explicitly mention AC-4, Dr. Webb's report dated February 29, 2008, the Order indicates that the Appeals Council received this evidence.  (Tr. at 9.)  The Appeals Council is not required to provide a detailed analysis of supplemental evidence, and did not err by failing to specifically mention AC-4 in its Notice.  See Davis v. Barnhart, 392 F. Supp.2d 747, 751 (W.D. Va. 2005) ("The Appeals Council is not obliged to supply reasons for refusing to grant review under § 404.970, even if a claimant has submitted new evidence.") (citing Freeman v. Halter, No. 00-2471, 2001 WL 847978 (4th Cir. July 27, 2001)).

Furthermore, Dr. Webb's opinion on the Assessment postdates the ALJ's decision by a few months, and while Dr. Webb stated that Claimant had been a patient "of ours since 7-11-07," just weeks before the ALJ's decision, Dr. Webb did not provide treatment notes dated before or even around the time of the ALJ's decision.  Dr. Webb also stated that Claimant reported to his office with neck pain, not complaints related to his mental condition.  Dr. Webb also did not indicate when Claimant began individual counseling, and the evidence from him simply does not support a finding other than that reached by the ALJ related to Claimant's mental impairments.  Claimant was adamant throughout the record that he did not have a mental impairment.  While such statements from a claimant may not always be reliable, the substantial medical evidence of record from the time period before the ALJ confirms that Claimant did not suffer a severe mental impairment.

Claimant's final argument is that the ALJ failed in his heightened duty of care to the Claimant, who was pro se, by not helping the Claimant complete the record or asking him at the hearing about his current medical treatment.  (Pl.'s Br. at 12.)

In Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1980), the Fourth Circuit, citing 20 C.F.R. § 416.927, acknowledged that "claimants in disability cases are entitled to a full and fair hearing of their claims ...." The court in Sims wrote that

> the failure to have such a hearing may constitute good
> cause sufficient to remand to the Secretary under 42

16

U.S.C. [§] 405(g) for the taking of additional evidence. While lack of representation by counsel is not by itself an indication that a hearing was not full and fair, it is settled that where the absence of counsel created clear prejudice or unfairness to the claimant, a remand is proper. <u>Dombrowolsky v. Califano</u>, 606 F.2d 403 (3rd Cir. 1979); cf. <u>Cross v. Finch</u>, 427 F.2d 406 (5th Cir. 1970). It is equally settled that in <u>pro</u> <u>se</u> cases, Administrative Law Judges have a duty to assume a more active role in helping claimants develop the record. <u>Crider v. Harris</u>, 624 F.2d 15 (4th Cir. 1980); <u>Livingston v. Califano</u>, 614 F.2d 342 (3rd Cir. 1980).

<u>Id.</u> at 27-28 (footnote omitted).

The undersigned proposes that the presiding District Judge find that the ALJ adequately developed the record in this case and properly assisted Claimant in this case, given his <u>pro se</u> status. The ALJ bent over backwards at both administrative hearings to make sure the record was properly developed in this matter and to give Claimant <u>every</u> opportunity to obtain counsel.

Claimant complains that the ALJ failed to send Claimant for a psychological consultation or update the medical record in light of Claimant's reference at the hearing to being diagnosed with emphysema at St. Mary's hospital and to additional evidence from Holzer Clinic. In addition, Claimant complains that the ALJ did not ask Claimant about his current medical treatment at the hearing. (Pl.'s Br. at 13-14.)

At the first administrative hearing, Claimant mentioned that he had been to St. Mary's Hospital and undergone a stress test. He testified that he was told he had emphysema. (Tr. at 294-95.) The ALJ continued the first administrative hearing to obtain a

consultative examination related to Claimant's orthopedic complaints, as well as his abilities related to "bending, stooping, breathing, and stuff like that ...."   (Tr. at 297.)   Indeed, Claimant underwent such examination on February 26, 2007.  During the examination, Claimant did not complain of breathing problems, and Dr. Burns mentions no positive objective findings in that regard.  (Tr. at 244.)  At the conclusion of the first hearing, the ALJ told Claimant that if the consultative report was favorable to Claimant, then an additional hearing might be unnecessary.  The ALJ further stated that "[i]f it is a questionable thing, where you know, it could go either way I'm going to schedule a hearing, and if I schedule a hearing then that is a pretty good indication to you that maybe you need to get an attorney."   (Tr. at 298.) Claimant indicated that he understood.  (Tr. at 298.)

At the supplemental hearing, Claimant indicated that he had just received notice the day before the hearing that he was required to appeal.  (Tr. at 304.)   The ALJ offered multiple times to continue the hearing so that Claimant could obtain representation, but he declined.  (Tr. at 304, 307, 316.)   The ALJ even explained that if Claimant went to an attorney, "maybe he can send you to a different doctor, you know."  (Tr. at 307.)   The ALJ proceeded with the hearing and assisted Claimant in posing a hypothetical question to the vocational expert.  (Tr. at 314-15.)

The evidence of record before the ALJ related to Claimant's

mental condition was adequate, and the ALJ was under no obligation to refer Claimant for a consultative psychological examination given the findings of Ms. Corbett-Alderman.  Furthermore, the ALJ adequately questioned Claimant about his impairments at both hearings.  The ALJ more than complied with his obligations to Claimant in developing the record and assisting him at the administrative hearing, and the undersigned proposes that the presiding District Judge so find.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Robert C. Chambers.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de</u> <u>novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Chambers.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

<u>July 16, 2010</u>
        Date

Mary E. Stanley
United States Magistrate Judge